FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2017 JUN 20 AM 8: 27

ROBIN DONALDSON,

    Plaintiff,

-VS-

CASE NO.: 3:17-cv-703-J-32MCR

CREDIT ONE BANK, N.A.,

    Defendant.

_____/

## COMPLAINT

COMES NOW Plaintiff, ROBIN DONALDSON, by and through the undersigned counsel, and sues Defendant, CREDIT ONE BANK, N.A., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA") .

## INTRODUCTION

1. The TCPA was enacted to prevent companies like CREDIT ONE BANK, N.A, N.A., from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their

1

political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Clay County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the

judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Middleburg, Clay County, Florida.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8).

12. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

13. Defendant is a national association with its principal place of business located at 585 Pilot Road, Las Vegas, NV 89119, and doing business in the state of Florida.

14. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

15. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (904) *** - 9192, and was the called party and recipient of Defendant's hereinafter described calls.

16. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (904) *** - 9192 in an attempt to collect an alleged debt.

17. On several occasions over the last four (4) years Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

18. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (904) 204-2006, and (904) 204-2007, and when those numbers are called, a pre-recorded message answers "thank you

3

for calling Credit One Bank. Please hold while we connect you to the next available representative." Shortly thereafter, the call is transferred to a live agent/representative who identifies the company as Credit One Bank.

19.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, and because when she answered a call from the Defendant she would hear an extended pause before a representative would come on the line.

20.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

21.     In or about January of 2017, Plaintiff answered a call from Defendant to her aforementioned cellular telephone number, met with an extended pause, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant that the calls to her cellular phone were harassing, that she would make her payment as soon as she could, and demanded that they cease calling her aforementioned cellular telephone number.

22.     During the aforementioned phone call with Defendant in or about January of 2017, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

23. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

24. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

25. Additionally, in or about March of 2017, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular phone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

26. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

27. On at least four (4) separate occasions, Plaintiff has answered a call from Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

28. The Plaintiff's repeated requests for the harassment to end were ignored.

29. Defendant has placed approximately eighty (80) calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of twenty-one (21) calls received from January 25, 2017 through January 31, 2017).

30. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiff's cellular telephone in this case.

31. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

32. Defendant's corporate policy is structured so as to continue to call individuals like, Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

33. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

34. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

35. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

36. Defendant's corporate policy provided no means for the Plaintiff to have her number removed from the call list.

37. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called

38. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

39. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

40. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

41. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

45. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services

46. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, and aggravation.

## COUNT I
### (Violation of the TCPA)

47. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

48. Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

49. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant CREDIT ONE BANK, N.A for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

50. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

51. At all times relevant to this action, Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

52. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the alleged debtor or any member of her or her family with such frequency as can reasonably be expected to harass the alleged debtor or her or her family.

53. Defendant has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the alleged debtor or any member of her or her family.

54. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant CREDIT ONE BANK, N.A. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

s/*Octavio Gomez*
Octavio Gomez, Esquire
Florida Bar No. 338620
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Primary Email: TGomez@ForThePeople.com
Secondary Email: PMitchell@ForThePeople.com
*Attorney for Plaintiff*